## T. B. CALLISON v. THE STATE.

*No. 1215.   Decided February 24th, 1897.*

37  211
39  439

**1.   Assault With Intent to Rape—Continuance—Conspiracy—Evidence as to.**

On a trial for an assault with intent to rape, by a father upon one of his daughters, where a continuance was sought to procure testimony to prove that another married daughter had told her husband, one S., that she had had carnal intercourse with her father before her marriage to him. The object of said testimony being, as stated in the application, to prove that a conspiracy had been instigated by S., to have defendant convicted in this case, in order to save the reputation of his wife. Held: The evidence was wholly immaterial and could have solved no issue in the case, and the continuance was properly refused.

**2.   Same.**

Where an application for continuance was sought to prove that a third daughter of defendant, after being before the grand jury as a witness, stated to the absent witness, that she, the daughter, had had intercourse with her brother, Tom, and no other person. Held: The evidence was immaterial and irrelevant, and the continuance was properly refused.

**3.   Trial—Service of Copy of the Indictment.**

Where a defendant went to trial voluntarily, without objection, before the expiration of two days after the service of the copy of the indictment upon him, he cannot complain of this matter.

**4.   Same—Indictment—Counts.**

Where an indictment contains two counts, and testimony has been introduced as to both, it is not error for the court to try the case with reference to both.

**5.   Leading Questions—Unwilling Witness.**

On a trial for assault with intent to rape, where it appeared that the prosecutrix, as a witness, is under the influence of defendant, and manifests an unwillingness to testify in the case, it is not error to permit leading questions to be put to her.

**6. Evidence of Other Similar Acts.**

On a trial for assault with intent to rape, testimony as to the commission of other acts and transactions, than the one alleged, is admissible, for the purpose of reinforcing and corroborating the testimony as to the particular act.

**7. Evidence.**

It is not error to permit the sheriff to testify, that the day after defendant was put in jail, he saw the prosecutrix sign a statement, written by the County Attorney, the writing not having been introduced in evidence, the mere statement of such fact could not have harmed defendant.

**8. Assault With Intent to Commit Rape—Age of Consent—Charge.**

Where an indictment for assault with intent to commit rape, was filed the 16th of October, 1896, and contained two counts, one alleging that the female was under 12 years of age, and the other that she was under 15 years of age, and the court correctly instructed the jury as to the law with reference to the age of consent, both prior and subsequent to the Act of July 30, 1895, raising the age from twelve to fifteen years; and further instructed the jury, that if the assault was committed prior to July 30, 1895, and, "You believe from the evidence, that at the time the same was made, and the said Willie C. was 12 years of age or over, you will find the defendant not guilty. If the assault, if made at all, was made prior to July 30, 1895, you cannot convict defendant, unless you find, and believe beyond a reasonable doubt, that the said Willie C., at the time of said assault, was under the age of twelve years." Held: The charge was as liberal as the defendant was entitled to.

**9. Same.**

Where the evidence showed, that the assault was committed since the law raised the age of consent to fifteen years (July 30, 1895), the offense of assault to commit rape is complete whether it was committed with or without the consent of the female, who, at the time, was under fifteen years of age.

APPEAL from the District Court of Parker.    Tried below before Hon. J. W. PATTERSON.

Appeal from a conviction for assault to rape a female under the age of consent; penalty, two years' imprisonment in the penitentiary.

The indictment charged appellant with an assault with intent to rape his daughter, Willie Callison.    It contained two counts; the first alleging the assault to have been committed upon the person of a female under the age of 12 years; the second count alleging the age of the female as under 15 years.    The date of the offense, as alleged in both counts, was the 1st day of July, 1895, and the indictment was filed on the 16th day of October, 1896.

The following is the testimony in the case:  Willie Callison said: "I live with my sister, Mrs. Beeman."   "Do you live in Parker County?" "I don't know."   "How long have you lived in Texas?"   "I don't know."   "Is T. D. Callison your father?"   "Yes sir."   "How old are you?"   "I am 13 years old.  I was 13 on the 28th of last April."   "Do you recollect being before the last grand jury?"   "Yes sir."   "Did you make certain statements before the grand jury?"   "Yes sir."   "Did your father ever do anything to you?"   "No sir."   "Don't you recollect signing a statement last spring when the officers went to your father's house?"   "I recollect signing a writing then."   "Didn't you state to me, a few minutes ago, in my room, that your father did something to you in the cotton seed pen?"   "Yes sir."   "Did your father pull up your dress?"   "No sir."   "Did you pull up your dress?"   "Yes sir.

I don't know why I pulled up my dress." "Did your father unbutton his pants?" "Yes sir." "Did he get on top of you?" "Yes sir." "Were you on your back while he was on you?" "Yes." "How long was he on you?" "I don't know." "Were you ever with your father out in the sprout patch on his farm?" "Yes sir." "What were you doing out there?" "We were cutting sprouts." "Did he tell you to lie down?" "No sir." "Did you pull up your dress?" "Yes sir." "Did your father pull down his pants?" "Yes sir." "Did he get on top of you?" "Yes sir. I laid down on the ground and pulled up my clothes, and the defendant pulled down his pants and got on top of me while I was on my back, and he had his pants down." "When was this, Willie?" "I don't know, but think it was last year. It was before we planted cotton." "Did it happen at the cotton seed pen first?" "I don't know which was first." "Was it in the summer or spring?" "I don't know when it was." "Was it a summer month or a winter month?" "I don't know." The defendant objected to each and all of said questions, because they were leading. His objection being overruled, defendant excepted.

Cross-examination: "Did your father ever hurt you?" "No sir." "Did he ever try to hurt you?" "No sir." "Did he ever try to do anything to you?" "No sir." "Was what you told the officers true, or was it a story?" "It was a story." "Did not somebody tell you that you would be put in jail if you did not tell at the trial the same thing you told the officers?" "Yes sir." "Who told you that you would be put in jail?" "My sister, Mamie."

Redirect: "Did this occur at the sprout patch, before the land was planted?" "I don't know, but think it was." "Was there cotton or cotton seed in the pen?" "I don't know." "Were you picking cotton." "No sir." "What were you doing at the pen?" "I don't know." "Did your father ever try to get on you or try to do anything to you at any other time or place except the cotton seed pen and the sprout patch?" "No sir."

Mamie Callison said: "Willie Callison, who has just left the stand, is my sister. She was 13 years old on the 28th day of last April. I saw my father trying to do something to Willie last spring. It was at our house, in Parker County. They were lying down in the middle of the floor in the main room of the house. Willie's clothes were pulled up and my father's pants were pulled down. He was lying on top of her. When they saw me they got up; one went out one way and the other went in the opposite direction. It was this year I saw them. Yes, I am as certain that it was this year as I am that I saw them. This was the only time I ever saw such a thing. I was hoeing cotton on that day, and had come to the house to get a drink of water. My brother Tom was hoeing cotton that day with me. I am certain it was this last spring or summer. My brother Tom was convicted of incest with me at the April term of the District Court. I have not seen him since the first of last April, the day of his arrest; he is the father of

my baby, which was born on the 30th day of last April. I am 15 years of age, Tom is 16."

E. N. McCracken, witness for the State, said: "I am sheriff of Parker County. I went to the house of the defendant, May 13th, 1896, the day after he was put in jail. I was present when Willie Callison made a statement. Preston Martin, the Assistant County Attorney, and myself, were present. There were no threats made by me or Martin to make the same. The statement made by Willie Callison was in answer to questions asked by Preston Martin. Willie Callison, recalled by the appellant, said that her father had never gotton on top of her in the house where they lived; that Mamie had never come upon them when he was on top of her. She denied in,toto the whole of Mamie's testimony."

Mrs. Annie Callison, witness for defendant, said: "I live in the same yard with the defendant; have lived there about two years. I have never heard of any complaint by Willie Callison. Defendant was always kind to his children. Mamie Callison did not work out in the cotton patch before the birth of her child, which was on the 30th day of April, 1896."

Mrs. Beeman, witness for defendant, said: "I am 36 years old and a sister to Willie Callison. I was with her frequently last spring; and lived about half a mile from my father's house. During my entire life I have never heard of any attempt of my father to mistreat Willie Callison in any way. She has never made complaint to me or to any one in my presence of any improper conduct or any ill-treatment on part of defendant. Mamie Callison did not work out in the farm for four or five weeks before the birth of her baby or four or five weeks after."

*J. M. Richards* and *R. L. Stennis*, for appellant.—The court erred in overruling defendant's application for a continuance and his objection to being tried October 21, 1896, on an indictment presented October 16, 1896, when defendant had been arrested only two days before, that is, on October 19, 1896, and because no copy of the indictment had been served upon him; he not being out on bail, but confined in jail— the said two days, from October 19 to October 21, not being sufficient time to prepare for trial.

Where a defendant is arrested charged with a felony, it is error to compel him to go to trial over his objections without having served him with a certified copy of the indictment, unless defendant fails to insist on his rights in a manner that will serve the court with notice of the fact that he has not been served with such copy; or unless he in person waives such copy. Art. 540, Code Crim. Proc.; McDuff v. State, 4 Tex. Crim. App., 58; Wendall v. State, 25 Tex. Crim. App., 717; Harris v. State, 32 Tex. Crim. Rep., 279.

The court erred in failing and refusing to require the State to elect upon which count in the indictment a conviction would be asked. Dalton v. State, 4 Tex. Crim. App., 333; Lunn v. State, 44 Texas, 85;

Keeler v. State, 15 Tex. Crim. App., 111; Simms v. State, 10 Tex. Crim. App., 131; Fisher v. State, 34 Texas, 792.

The court erred in permitting the County Attorney to ask witness for the State, Willie Callison, leading questions, it not being shown that she was an unwilling witness—said questions and answers being asked and answered over the objections of the defendant. Conn v. State, 11 Tex. Crim. App., 399.

The evidence fails to show that the defendant, at the time of the alleged assault, had the ulterior purpose of committing a rape, and fails to show any attempt to penetrate the private parts of the prosecutrix. Convictions cannot be sustained upon mere suspicion—if legal evidence is not sufficient a new trial should be granted. Willis v. State, 15 Tex. Crim. App., 118; Allen v. State, 36 Tex. Crim. Rep., 381; Bozeman v. State, 34 Tex. Crim. Rep., 503; McGee v. State, 21 Tex. Crim. App., 670; Sanford v. State, 12 Tex. Crim. App., 196; Peterson v. State, 14 Tex. Crim. App., 162; Thomas v. State, 16 Tex. Crim. App., 535; Johnson v. State, 17 Tex. Crim. App., 565; Jones v. State, 18 Tex. Crim. App., 485; Moore v. State, 20 Tex. Crim. App., 275; Pless v. State, 23 Tex. Crim. App., 73; Dodson v. State, 24 Tex. Crim. App., 514.

*Nat P. Jackson* and *Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to rape, and his punishment assessed at confinement in the penitentiary for two years, and prosecutes this appeal. Appellant made a motion for a continuance in this case, on the ground that he desired the testimony of W. D. Ledford and Mattie Ledford, residents of California; that he had been recently arrested, and did not have time to procure their depositions. This, we think, was reasonable diligence; but we fail to see the materiality of this testimony. As stated, it was for the purpose of showing a conspiracy instigated on the part of one W. J. Sullivan to cause defendant to be convicted of this offense, in order to save the reputation of his wife, who was the daughter of the defendant. The substance of the testimony was to the effect that Jennie Sullivan confessed to her husband that she had had carnal intercourse with her father before her marriage with said Sullivan. Sullivan was not a witness in this case. Therefore the object of this testimony was not to affect anything that he might testify to. This is certainly a peculiar sort of conspiracy, the object of which was to save the reputation of his wife by showing in court a confession of her intimacy with the defendant. We utterly fail to see, under the facts and circumstances of this case, how said testimony was calculated to benefit the defendant, or how the same was material to solve any issue in this case. In addition to this, it was stated that it was expected to be proved by Mattie Ledford that she was in Weatherford the day that Mamie Callison, a witness for the State against the defendant, went before the grand

jury, and, immediately after said Mamie came out of the grand-jury room, she told her (witness) that she had had carnal intercourse with her brother Tom, and with no other person. This part of the bill fails to show how this portion of the testimony was pertinent. It is not shown that said Mamie testified on the trial that she had had intercourse with any other person except her brother Tom, and it is not shown that she testified that she had had intercourse with her father; and if we recur to the statement of facts, in order to help out the bill (which we are not permitted to do), still that does not show how this testimony became material. There was no error in the court's overruling the motion for a continuance. There was no request to postpone the case for two days after service of copy of the indictment, nor is there any bill of exceptions showing that defendant raised this question. For aught that appears (if it be conceded that he went to trial before the expiration of two days after the service of the indictment), he went to trial voluntarily, without objecting to this course of procedure. Defendant objected to the court's proceeding on both counts in the indictment. There were two counts in the indictment. Testimony was introduced in regard to both. There was no error in this action of the court. As explained by the judge, there was no error in the court permitting leading questions to be put to the prosecuting witness, Willie Callison. She was the daughter of the defendant, was under his influence, and manifested an unwillingness to testify in the case. Nor was there any error in the court's permitting said witness to testify as to two transactions, nor in permitting the witness, Mamie Callison, to testify as to still another transaction. There were two counts in the indictment. The testimony of the first witness was evidently under the first count—that is, the one which alleged that she was under 12 years of age at the time of the alleged act; and the testimony of the other witness was as to an act under the second count, in which it was alleged that the act was committed when the prosecutrix was under 15 years of age. Aside from this, testimony of other acts was admissible for the purpose of reinforcing and corroborating the testimony as to a particular act. See, Hamilton v. State, 36 Tex. Crim. Rep., 372. No error appears in the action of the court in authorizing the State to prove by the sheriff of Parker County that, on the day after defendant was put in jail, he saw Willie Callison sign a statement written by the County Attorney. This statement was not introduced in evidence, and we see no harm that could ensue to the defendant from the mere statement of a witness that he saw said witness sign a statement. Appellant complains of the charge of the court, and insists that the court should have given the several special instructions requested by him. Some of these instructions go to define the specific intent with which the assault was alleged to have been committed. In our opinion, the court gave a correct charge upon this subject, and it was sufficient. Nor do we think the court committed any error in failing to charge on aggravated assault and battery. In the charge of the court, the jury were instructed under

both counts in the indictment, and the charge clearly pointed out the time when the law of 1895 went into effect, which raised the age of consent from twelve to fifteen years. The charge given the jury on the first count directed them, if they believed the act was committed before the 30th of July, 1895, and that the prosecutrix was then under 12 years of age, to convict defendant, regardless of whether or not she consented to the attempted act of carnal intercourse.

Under the second count, the jury were instructed, if they believed the attempted act of carnal intercourse was committed since the 30th of July, 1895, and prior to the 16th of October, 1896 (the date of the filing of said indictment), to convict defendant, regardless of whether or not the prosecutrix consented to the attempted act of carnal intercourse. This was responsive to the two counts in the indictment, as well as the evidence introduced in the case, and was correct. The court, also, in this connection, instructed the jury, if they believed the assault charged, if made at all, was made prior to the 30th of July, 1895, and "if you believe that, at the time the same was made, the said Willie Callison was 12 years of age or over, you will find the defendant not guilty. If the assault, if made at all, was made prior to the 30th day of July, 1895, you cannot convict the defendant, unless you find and believe beyond a reasonable doubt that the said Willie Callison, at the time of said assault, was under the age of 12 years." This, we believe, was as liberal a charge as the defendant was entitled to under the circumstances of this case. We have examined the testimony, and while the prosecutrix testified to two acts prior to the 30th of July, 1895, she is so indefinite as to time as to leave it uncertain as to whether these acts of attempted intercourse were committed before or after she was 12 years of age; and we might not be willing to sustain a conviction under this count. But on the second count we do not believe there can be any question as to the attempted act of carnal intercourse. On this branch of the case, Mamie Callison testified: "Willie Callison, who has just left the stand, is my sister. She was 13 years old on the 28th day of last April. I saw my father trying to do something to Willie last spring. It was at her home, which is in Parker County, Texas. They were lying down in the middle of the floor, in the main room of the house. Willie's clothes were pulled up, and my father's pants were pulled down. He was lying on top of her. When they saw me, they got up, and one went one way, and the other went in the opposite direction." The trial of this case was at the fall term, 1896, and "last spring," alluded to, was the spring of 1896. It is not controverted that the prosecutrix was not 15 years of age at the time, and the law of 1895, raising the age of consent to fifteen years, was then in effect. The above proof, we think, shows an attempt, at least, on the part of the defendant, to have carnal intercourse with his daughter, Willie Callison. The fact that she was consenting makes no difference. The statute makes carnal intercourse under such circumstances, with or without consent, rape; and we have held that an attempt to have car-

nal intercourse of a female under the age of 15 years, with her consent, was an assault with intent to commit rape, where the evidence made it manifest that it was the purpose of the defendant to have carnal knowledge of such female. The force used in the effort at penetration is sufficient to constitute the act of assault with intent to rape. See, Allen v. State, 36 Tex. Crim. Rep., 381. The judgment is affirmed.

*Affirmed.*

[NOTE.—Motion for rehearing filed by appellant, was overruled without a written opinion.—Reporter.]