## Mark Stoker v. The State.

### No. 6816.   Decided November 29, 1922.

#### 1.—Assault to Rape—Insufficiency of the Evidence.

Where, upon trial of assault with intent to rape, the evidence for the State did not demonstrate a present intent to at once accomplish the act of intercourse, same was insufficient to sustain the conviction of assault with intent to rape upon a female under the age of consent. Following Cromeans v. State, 59 Texas Crim. Rep., 611, and other cases.

#### 2.—Same—Aggravated Assault—Practice in Trial Court.

The facts may justify a conviction for aggravated assault; upon that issue, however, the jury should be instructed upon the theory of consent to such familiarity, if any has taken place. Following Hand v. State, 88 Texas Crim. Rep., 431, and other cases.

#### 3.—Same—Evidence—Confession—Arrest.

It was error to receive in evidence defendant's declarations which were made under circumstances rendering a confession inadmissible, and it was not essential to the legal custody of defendant that the officer be bodily present at all times. Following Buckner v. State, 52 Texas Crim. Rep., 372.

#### 4.—Same—Argument of Counsel—Practice on Appeal.

Where the judgment is reversed and the cause remanded upon other ground, the objections to the argument of counsel need not be considered on appeal.

Appeal from the District Court of Nacogdoches.   Tried below before the Honorable L. D. Guinn.

Appeal from a conviction of assault with intent to rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Russell & Seale*, for appellant.—On question of confession: Deckard v. State, 225 S. W. Rep., 166, and cases cited in opinion.

On question of insufficiency of evidence: Strippling v. State, 80 S. W. Rep., 376; Tubbs v. State, 95 id., 113.

*R. G. Storey*, Assistant Attorney General, for the State.

MORROW, Presiding Judge.—The offense is assault with intent to rape; punishment fixed at confinement in the penitentiary for a period of five years.

Nettie Rogers, the subject of the alleged assault, was a girl sixteen years of age, residing with her parents,   The occurrence upon which the prosecution is based took place in the morning before breakfast. The appellant had spent the night at her home.   She slept in the

room in which her mother and two babies slept. Her mother had left the room to prepare breakfast and her father was engaged about the premises. She awoke and discovered the appellant sitting on her bed and holding in his hand her left hand on which she had a ring. She struggled to get up and he put his hands on her breast and other parts of her body. A child cried, and she told appellant that he had better leave; that her mother would be coming. She dressed and "raised a racket" about the ring and told the appellant that she wanted it. She was crying. Appellant denied having the ring. She told him that he did, as he had taken it off her finger. While the appellant was on the bed, he said:

"Honey, will you promise to meet me at the gap when I start home? If you will, I will give you some money and tell you how to make more money."

The witness said:

"Then I tried to get loose from him. When the baby cried he left. While the baby was crying I told him that mother was coming and he had better leave. I was off the bed then and he had hold of my arms. He never attempted to crawl in bed with me after I roused up. He kissed me after I roused up and began to cry. . . . After breakfast, papa called me out and asked if I had gotten my ring."

While out at the car, the appellant wanted the witness to apologize. She finally apologized about the ring but not about the other matter. Before he left, she had told her father about a part of what the appellant had done. She told her father about appellant putting his hand on her face and about the ring.

The house in which the prosecutrix and her parents resided had three sleeping rooms, a gallery in front, a kitchen, and a back porch. The appellant slept on the porch, which could be reached only by passing through one of the rooms. One room was occupied by the father of the prosecutrix and her grandmother; one room was occupied by the prosecutrix her mother and two small children.

The father arose early and fed his stock. He returned and woke his wife and she went to prepare the breakfast. The father then went to call the appellant to prepare for breakfast and found him dressed and walking on the gallery. He washed his face and sat down to wait for breakfast. Quoting the witness, he said: "About that time my daughter came out of the house crying and begging for her ring," and she said to appellant: "I want my ring," and he began to pacify her and said: "You have lost it or laid it down somewhere and forgot where you put it." She then went into the kitchen where her mother was. Her mother came out at once and said to appellant: "Have you been in her room?" He said: "No, I have not been there bothering her." The witness said: "My wife

went back and pretty soon she said that breakfast was ready, so we went in and ate breakfast and after that we came back out on the gallery. The girl was still crying.'' The father asked the appellant if he had been in Nettie's room, and the appellant said that he had. The witness said that the appellant, on the night previous, had complained that his kidneys were giving him trouble and at times demanded immediate attention; that such was the situation on the morning in question, and that he did not want to go out on the gallery without knowing who was in the room, and he called to find out; that he did not want to ''make water'' without knowing who was in the room; that he had gone in the room to see who was in there before he went out on the gallery to ''make water.'' Appellant, the father and the daughter walked out to appellant's car, and she said: ''Papa, he was; he came in there.'' and she told the witness about appellant holding her hand and calling her; that she woke up and felt fainty-like, as she was subject to fainty spells. Appellant then begged that the matter be overlooked. He exposed his pockets to show that he did not have the ring. The witness said: ''I am going to let you go, but will investigate the matter further. When I have investigated it, I will see you later.'' They shook hands and the appellant departed.

The evidence falls short of proving the offense as defined in the case of Cromeans v. State, 59 Texas Crim. Rep., 611. *It does not demonstrate a present intent to at once accomplish the act of intercourse.* Thompson v. State, 82 Texas Crim. Rep., 524; Armstead v. State, 89 Texas Crim. Rep., 477; Blackstock v. State, 237 S. W. Rep., 282.

The proximity of the members of the family, the hour of the day, the conduct, as well as the language imputed to the appellant, are destructive of the theory of an intent to perform the act at the immediate time and place. They rather suggest his intent to persuade the prosecutrix to submit to his embraces at a subsequent occasion.

The facts may justify a verdict of conviction for aggravated assault. Upon that issue, however, if requested upon another trial, the jury should be instructed on the theory of consent to such familiarity, if any, as took place. There was evidence that on a previous occasion the prosecutrix had received some money from the appellant; that on the evening in question, he gave her a dollar and requested her to come to his bed; that she took no offense at this request, though she declined to comply with it. Iland v. State, 88 Texas Crim. Rep., 431; Price v. State, 236 S. W. Rep., 723; Shields v. State, 39 Texas Crim. Rep., 14.

After the complaint, a warrant was issued for the arrest of the appellant and placed in the hands of an officer. The officer went to the appellant and told him of the necessity of arresting him and

showed him the warrant, but having to make another arrest at a different place, he trusted the appellant to go before the justice of the Peace at a certain hour on the same day. The appellant appeared. The officer, while not remaining with the appellant all of the time, kept him under surveillance until he, was released on. bail. Under these circumstances, we think it was error for the court to receive in evidence the declarations of the appellant which were not made under circumstances rendering a confession admissible, as defined in Article 810 of the Code of Criminal Procedure. It was not essential to the legal custody of the appellant that the arresting officer be bodily present at all times. Buckner v. State, 52 Texas. Crim. Rep., 272. The bill of exceptions upon this subject is hardly sufficient to require its consideration. The matter is mentioned, however, in view of another trial.

In his closing address to the jury, the counsel for the prosecution indulged in language similar to that commented upon in the Carter case, 87 Texas Crim. Rep., 299, 221 S. W. Rep., 624. Doubtless, this will not occur again on another trial.

For the reasons stated above, the judgment is reversed and the cause remanded.

*Reversed and remanded.*