### A. A. HUEBSCH v. THE STATE.

#### No. 7042. Decided May 30, 1923.

**1.—Assault to Rape—Insufficiency of the Evidence.**

Where, upon trial for assault with intent to rape upon a female under the age of consent, the evidence was insufficient to support the conviction the judgment must be reversed and the cause remanded.

**2.—Same—Attempt to Rape—Female under Age—Assault to Rape.**

It is held, although there was no force used, that Article 1029, P. C., embraces the offense of assault to rape upon a girl under the age of consent, if defendant be an adult male and takes hold of the female with the present intent to have carnal intercourse with her. Following Cromeans v. State, 59 Texas Crim. Rep., 672.

**3.—Same—Statutes Construed—Assault to Rape—Aggravated Assault.**

The trouble is accentuated with reference to the nature of the offense by the fact that the offense is not specifically described in the statute, and the language embraced in the Cromeans case, interpreting the statute, is difficult to apply, especially in instances where the dividing line between an aggravated assault and an assault to rape is shadowy; but in the instant case the evidence falls short of the measure of proof required to sustain the conviction.

**4.—Same—Statutes Construed—Assault to Rape—Specific Intent.**

Carnal Knowledge of a girl under the age of consent is denounced as rape in Article 1063, P. C., and an attempt to have carnal knowledge of such person is held to constitute an assault to rape; but the specific intent must be proved and not merely the intent to fondle and persuade the female to consent to intercourse on some future occasion. Following Blackstock v. State, 237 S. W. Rep., 284, and other cases.

Appeal from the District Court of Gonzales. Tried below before the Honorable C. K. Quinn.

Appeal from a conviction of assault with intent to rape; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. H. Blanton, W. B. Green* and *Rainbolt & Midkiff,* for appellant.—Citing Cromeans v. State, 59 Texas Crim. Rep., 672; Thompson v. State, 200 S. W. Rep., 168; Armstead v. State, 232 id., 515.

*R. G. Storey,* Assistant Attorney General, for the State.—Cited, Moore v. State, 237 S. W. Rep., 932.

MORROW, Presiding Judge.—The conviction is for assault with intent to rape; punishment fixed at confinement in the penitentiary for a period of two years.

The prosecutrix was a girl slightly under eighteen years of age. She was a member of the Roman Catholic Church. The appellant was a priest of that church. She was preparing for confirmation under his instructions. Others attended the class, but the instructions were given separately. In her testimony she related two incidents: the first occurring in January, 1921, and the other in February of that year. The charge of the court is so framed as to eliminate the first as a basis for the conviction, though the evidence relating to it was permitted to go to the jury upon the issue of intent. On the first occasion, according to the prosecutrix, she and others were awaiting instructions for the purpose of confirmation. She entered his room, and he locked the door, stating that there should be but one there at the time. While there, he attempted to lift up her dress and grab her legs, and put his hand on her legs below the knee. Only she and the appellant were in the room at the time. She said that from his actions she had her thoughts about his intentions. Touching the episode upon which the prosecution is based, we quote from her testimony:

"The first time that he ever did these things was on Saturday; it was at the beginning of the year 1921. ***Yes, sir, something occurred in February, 1921; it occurred in his room. Being asked if anything else happened on further in February, witness said he did not do her anything, after this time she has already related. After that instance which I have just had reference to, that I just testified to, there were some other instances. Again the Saturday after that he wanted to examine me. He was lifting up my dress; that was in his room in the parish home, about which I have testified before; it was in his office; he told me to let him see, that he is like a doctor. The first thing he did before he said that he was trying to catch me or get hold of my neck. He got hold of me, although I objected; he caught my neck with his hands; he put his hands around my neck, and asked me for a kiss. I told him that he could not kiss me; he kissed me on my cheek about three times. ***When he had his hands around my neck and was kissing me, he was lifting up my dress at that time, and was holding me around the neck. When he was lifting up my dress, he told me that he wanted to examine me. He did not state why he wanted to examine me. No, he did not say anything to me about what right he had to examine me, if any. It was on Saturday when he said he was like a doctor. When he said he was like a doctor, and wanted to examine me, he was lifting up my dress. While

he had me around the neck with his arm and kissed me, and was lifting up my dress, saying he wanted to examine me, I was holding down my dress.  To be exact, I was holding my dress, and did not want to allow him, or to give him the privilege.  The doors were locked on this occasion I am talking about.

"Being asked if there was any other time that anything of this character occurred, about which she has related, between herself and the priest, the defendant, witness answered that he hasn't done anything to her.  Being asked if anything of this kind occurred before, or if these were the only two times anything like that occurred, witness answered that he didn't want anything from her, only picking up her dress.***

"When he was trying to put up my clothes, and was kissing me on the cheek, and having his arm around my neck, and I was defending myself, I was protecting myself so he wouldn't do nothing to me, so he wouldn't do something to me."

On cross-examination she testified that she continued to go to the parish house and receive instructions until March 6th, when she was confirmed; that the two instances related by her were the only occasions upon which appellant had been guilty of any misconduct towards her.  She also said that she did not tell her mother about it until after the sixth of March, because appellant had forbidden her to do so.  On re-direct examination she used this language:

"When I testified yesterday that the priest wanted nothing from me when he lifted my dress, I meant, when I made that expression, that I thought he wanted something.  Being asked if she understood that yesterday she did testify that 'the priest wanted nothing from me when he lifted my dress,' witness answered: 'He did not want anything, but I thought what he wanted.  That is what I said yesterday.'  Being asked what she thought he wanted, witness answered: 'He did not want, but I was thinking, or I had my thoughts.' "

The judgment is attacked upon the ground that the evidence is not adequate to support the verdict.  The statute defining the offense of assault with intent to rape is in these words:

"If any person shall assault a woman with intent to commit the offense of rape, he shall be punished by confinement in the penitentiary for any terms of years not less than two.  (Penal Code, Art. 1029.)

Whether an attempt to have carnal knowledge of a female under the age of consent will support a prosecution for an assault with intent to rape, has been the subject of much discussion and contrariety of opinion as reflected by the decisions of this court and that of other jurisdictions.  In Hardin's case, 39 Texas Crim. Rep. 426, the decision was against the validity of such a prosecution.  The majority opinion was written by Judge Hurt, and the dissenting opinion by Judge Henderson.  Both opinions display an uncommon degree of research

and are worthy of the masterly minds producing them. In Croomes' case, 40 Texas Crim. Rep. 672, the opinion in Hardin's case was over-ruled in the absence of one of the judges. The Cromeans' case, 59 Texas Crim. Rep. 672, was first affirmed. Judge Ramsey, in the meantime, upon the death of Judge Henderson having come upon the court, approved the dissenting opinion in Hardin's case, supra, but reluctantly consented to the affirmance of the Cromeans case because the facts therein did not bring it within the principle announced by Judge Henderson in his dissenting opinion in the Hardin case. Presiding Judge Davidson consenting to the affirmance with the statement that he regarded the majority opinion in the Hardin case correct. The case went into the hands of Special Judge Cobb, who wrote an elaborate opinion reversing the case upon the insufficiency of the evidence. He held, however, that although there was no force, Article 1029, supra, would embrace the offence of assault to rape up-on a girl under the age of consent, and endeavored to state the circumstance under which the conviction could be had. The form-ula announced by him in that opinion is embraced in a subdivision of the charge in this case in these words:

"If an adult male takes hold of a female under the age of eighteen years and handles her in such manner as under the circumstances of the particular case demonstrates a present intent to at once so subject her to his will, she consenting or not, as that he may then at the very time have carnal intercourse with her, he would be guilty of an assault with intent to rape.

"On the other hand, if such person so takes hold of such female for the purpose only of kissing her or fondling her, having no in-tent to have carnal knowledge of her at the very time, he would not be guilty of assault with intent to rape. There must be such force used in connection with the circumstances of the case to establish beyond a reasonable doubt the purpose of the defendant to at the very time have carnal intercourse with the female in ques-tion, with or without her consent, regardless of how slight said force may be."

This character of cases has since the Cromeans' case, supra, given this court much concern and difficulty owing, doubtless, to the fact that the nature of the offense is one against which the men who com-posed the jury naturally entertained strong feelings. The trouble is accentuated by the fact that the offense is not specifically de-scribed in the statute, and the language embraced in the Cromeans case interpreting the statute is difficult to apply, especially in in-stances where the dividing line between an aggravated assault and an assault to rape is shadowy. The court in the Cromeans case having furnished a definition of an assault with intent to rape and held that the facts in that case did not measure up to the legal re-quirements of the definition, the criminative evidence in that case is

of importance in measuring or interpreting the meaning of the decision. The statement of the evidence made by Judg Cobb is here quoted:

"Let us see what the facts are, taking the testimony of prosecutrix to be true. She was fourteen years of age August 15, 1908. On June 8 preceding that date she was walking alone from the town of Barksdale to her father's house, about two and one-half miles distant, and stopped at Bort's house, two or three hundred yards from appellant's home. Leaving Bort's she passed Cromeans' place, and had gone about one-half mile beyond it when appellant passed her riding a horse. He had alighted and was standing at a gate through which she desired to pass when the following incident occurred: She asked him to let her pass through the gate. He said to her: 'Let me see your cock.' She told him she would not do it, and demanded that he let her through the gate. He then said: 'Let me fuck you.' She said she would not and tried to get through the gate. He caught her hand. She jerked loose; he caught her arm; she again jerked loose and ran back down the road towards Barksdale, and saw him no more that day. He did not follow her. Appellant's parents and three sisters and himself lived near Barksdale on a public road, which runs in front of their door, and the gate mentioned by prosecutrix is about three-quarters of a mile from their residence. Appellant was sixteen years old August 17, 1909."

Accepting this as a fair criterion, we are of the opinion that the evidence in the instant case does not fill the measure requisite to support the conviction of the offense of assault with intent to rape. If the conviction were for an aggravated assault, our view would be different. It is undisputed that at the time the incident complained of occurred, there were a number of other people waiting in an adjoining room for their turn to interview the appellant. Several witnesses testified that the door connecting the two rooms was not locked and that there were no means of locking it. It was also shown without dispute that there were a number of other occupied buildings nearby, and that nothing unusual was observed in the conduct of the appellant towards the prosecutrix at the time. A witness for the State corroborated the prosecutrix, however, in the statement that there was a lock upon the door. The testimony of the prosecutrix upon which the conviction rests leaves the present intent of the appellant to immediately have intercourse with the prosecutrix in a degree of uncertainty. The intent to commit rape at the immediate time is deemed an imperative necessity. As said by Judge Cobb, the handling of the female must be such as *"under the circumstances of the particular case demonstrates a present intent to at once so subject her to his will, she consenting or not, as that he may then at the very time have carnal intercourse with her."* *"If, on the other hand, he takes hold of her for the purpose only of kissing her or*

94 T. C.—30

*fondling her, having no intent at the very time to have carnal knowledge with her,"* the offense is not an assault to rape. Carnal knowledge of a girl under the age of consent is denounced as rape in Article 1063 of the Penal Code. An attempt to have carnal knowledge of such person is held to constitute an *assault to rape.* That specific intent, however, must be proved, and not merely the intent to fondle and persuade the female to consent to intercourse on some future occasion. Blackstock v. State, 91 Texas Crim. Rep., 106, 237 S. W. Rep. 284; Stoker v. State, 93 Texas Crim. Rep., 24, 245 S. W. Rep., 445. The evidence must establish the required intent to rape, and must go beyond the mere possibility of such intent. Cotton v. State, 52 Texas Crim. Rep. 57; Hudson v. State, 49 Texas Crim. Rep. 24. To meet his measure, the facts relied on in the Cromeans' case are apparently as strong as the present evidence. In McAvoy's case, 41 Texas Crim. Rep. 56, it was held that the touching of the person with the ulterior purpose and intent at the time to have intercourse with a female under the age of consent was assault with intent to rape. This was overruled in the Cromeans' case. As illustrating the limitations implied in the law, as construed in the Cromeans' case, the discussion of the evidence by the writer of that opinion is worth repeating. From it we quote:

"Now, what does this prosecutrix say? 'He asked me to show my privates; invited me to sexual intercourse. I refused in succession both of his proposals. Then he placed his hand on mine, and when I jerked it away he put his hand upon my arm, and I jerked that away, and departed from him.' We think, notwithstanding appellant's denial, that he desired intercourse with prosecutrix, and it may reasonably be supposed he expected his request would find favor. Up to this point, this stage of the transaction, surely he was not guilty of assault to rape, however great his desire or flattering his hopes. She turns away and would leave him. He takes hold of her hand. No further word is spoken. With what intent did he lay hold upon her hand? Was it that he might detain her and make further solicitation? Was it that he might use force upon her and thereby accomplish his desire against her will? We think the last suggestion is repudiated by the facts. If he had designed force, surely he would not have desisted so readily. Clearly he had no purpose to overpower her by the use of such force, as he deemed her incapable of resisting. Did he compel her to remain that he might persuade her consent? If such were the case, his ulterior purpose was intercourse with her consent, yet if she should have consented, and no purpose of using any means but words to induce her consent, her detention was yet but a means to an end, that is to say, the end of obtaining her consent if so be she would consent. It is not an offense to place one's hand upon the child. It is not an assault with intent to rape if the design be merely to obtain her consent. There must be added to that, to say

the least, a present existing purpose to now realize the fruit of the consent.''

If the prosecutrix in a case of this character acquiesces in the conduct of the accused, the failure to make outcry is of no weight. No outcry is to be expected. In the instant case, it is the State's theory that all that was done by the accused was against the protest of the prosecutrix and without her consent. The fact that appellant desisted; that she continued her visits; that she did not inform her parents; that no unusual conduct in either the prosecutrix or the appellant was observed by those present and with whom she mingled, together with her failure to make outcry, or give those within the call of her voice and with whom she mingled a moment after she left appellant's presence some indication of her indignation, are matters not to be ignored in measuring the legal effect of the evidence and its sufficiency to establish the offense of which the appellant is convicted.

We have been impelled to write at some length by the apparent failure upon the part of the prosecution and some of the trial judges in case of this character to take note of the limitations and qualifications embraced in the case of Cromeans v. State, supra, particularly as drawing the distinction between an assault which may be of an aggravated type, and an assault with the specific intent to commit the offense of rape. Of course, all that has been said relates to a case in which the female is under the age of consent and within the purview of the statute defining rape. Any intent to modify or qualify the Cromeans' case is specifically disclaimed. On the contrary, in the absence of a more specific legislative declaration touching the offense in question, the Cromeans' case is accepted by this court as correctly stating the law. Measured by the rules of law and tested by the example of fact set forth in that case, we are constrained to regard the evidence in the instant case insufficient to justify the conviction for an assault with intent to rape.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*