Ellis Kennedy **DOUTHIT**, Appellant,

v.

**The STATE of Texas**, Appellee.

No. 44266.

Court of Criminal Appeals of Texas.

Dec. 21, 1971.

Rehearing Denied May 17, 1972.

Second Rehearing Denied July 12, 1972.

Herrington, Levgarg, Weeks & Jones by J. Terry Weeks, Austin, Charles W. Tessmer (on appeal), Ronald L. Goranson, Dallas (on appeal), for appellant.

Robert O. Smith, Dist. Atty., Herman Gotcher, Lawrence Wells and Sykes Houston, Asst. Dist. Attys., Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction by a jury for assault with the intent to commit rape. The court assessed the punishment at sixteen years.

The sufficiency of the evidence is challenged.

At approximately 11:00 p. m., September 6, 1969, the prosecutrix, a married woman

twenty-two years of age who had been visiting her parents, was returning to their room in the Chariot Inn Motel in Austin with some hamburgers and cigarettes for them. Just as she turned into the motel driveway, a car behind her flashed a red light. She pulled over and parked. The appellant, who was the driver of the other car, identified himself as Sergeant Reed showing her a badge and identification card. He told her she had made an illegal turn, that he had a pickup on a car like hers, and wanted to talk to her. Appellant told her to leave the hamburgers, get her keys and purse and get into his car.

After the prosecutrix entered appellant's car he told her he wanted to talk to her husband so they might bring the matter to a close without taking her to jail. Appellant did not turn at her house but turned off and drove down a gravel road. He stopped, turned on the inside light and placed a gun to her neck. He told her that he had killed a policeman, that killing her would make no difference and that he needed a hostage. He tied her hands behind her and tied her ankles.

Appellant told prosecutrix he needed to hide the car in a safe place and asked her where he could do so and then told her that she would not be hurt if she followed his instructions. All of this took place in Travis County.

The prosecutrix then directed appellant to drive toward Wimberley where she and her husband had once lived. Outside San Marcos and on the way to Wimberley he turned onto a side road and stopped. He untied her hands and tied her left arm to her left leg. Appellant then smoked a cigarette, drank a beer and took some pills. They left this spot because he said it was too close to the highway. Appellant then drove into a field and stopped behind a tree, untied her ankles and left hand but then tied her left leg to something under the seat. He smoked, drank more beer and consumed more pills which he told her were

dexadrine. This, along with some conversation, lasted about an hour.

Then appellant took off his shirt, saying his shoulder hurt, and told prosecutrix to rub it. After smoking another cigarette he told her to remove her dress. When she hesitated he got angry, put the gun to her stomach and told her she had better do as he said. He had her completely undress and then he undressed. Then appellant forced her to perform oral sodomy upon him. The prosecutrix tried to pull away and began crying, but he held her head down. Appellant then forced her to have sexual intercourse with him. She did not resist because of fear. After reaching a climax the appellant had another cigarette and forced her again to perform oral sodomy. After a few minutes of this he forced her into anal intercourse. She testified that she was in constant fear of her life and would not have otherwise complied with his demands. Around 6:00 or 7:00 a. m. the next day they left this location and went to a motel in San Marcos. Again he had sexual intercourse with her. These events took place in Hays County.

Around 2:30 p. m. they returned to Austin and appellant went to the Austin Municipal Airport and exchanged the rental car he had been driving for his own. The testimony shows that they then went to a motel in Georgetown in Williamson County and again had sexual relations.

Around 9:00 p. m., the appellant let prosecutrix out of the car just outside Austin. She went to the apartment of some friends where the police were called. Dr. Milton J. Railey testified that he examined her, determined that she had recently had sexual intercourse, found markings on her wrists and found the anal area irritated.

The appellant called witnesses from the motel in San Marcos and the one in Georgetown, where he registered under a different name, in an apparent attempt to show that the prosecutrix might have had

an opportunity to escape from him. The appellant did not testify.[1]

It appears that appellant was tried for the offense of rape of the prosecutrix and found not guilty in Williamson County. The record contains nothing else regarding that trial.

Appellant contends the trial court erred in its charge to the jury and in refusing to give his requested charge on what constitutes the offense of assault with intent to rape.

The court charged:

"To warrant a conviction of the defendant of an assault with intent to commit the crime of rape, it must appear from the evidence beyond a reasonable doubt, first, that the defendant, at the time and place alleged in the indictment, made an assault in and upon _____ (prosecutrix), and second, that the defendant then and there had the intent by such assault and by threats, as above defined, to obtain carnal konwledge of the said _____ (prosecutrix) without her consent and against her will."

The appellant requested the court to charge:

"To constitute the offense of 'assault with intent to rape' there must be an assault and a present intent on the part of the accused to subject the prosecutrix to his will, with her consent or not, so that he may then, at the very time, have intercourse with her."

Appellant contends that not only must there be an assault accompanied by a present (then and there) intent to rape, but the intent must also be to carry out that intent then and there, i. e. immediately. He relies upon Griffin v. State, 151 Tex.Cr.R. 185, 206 S.W.2d 259. In Griffin, the defendant had forced a woman at gunpoint to get into his car. She inquired as to his intent

and he replied that he was going to "get in her pants." Griffin attempted to fondle the woman during their drive. He stopped at a gate to a field where she tried unsuccessfully to get away. She did manage to throw away the magazine to his gun. He then drove into the field, tried to force her out of the car and threatened to shoot her. Knowing his gun was not loaded she refused. He then took her back to town. Acknowledging the difficulty of the fact situation, this Court, however, did not rule on the sufficiency of the evidence "in view of the fact that the case is to be reversed upon another question." That other question was the charge. The charge stated that the jury must find beyond a reasonable doubt the defendant "did then and there, unlawfully and by means of force or threats, make an assault upon [prosecutrix] and that said assault, if any so committed, was made with the intent of the defendant then and there to have carnal knowledge of the said . . . (prosecutrix), with or without her consent, . . . ." This Court said that under such a charge the jury could convict upon facts showing that the accused touched the prosecutrix or drew the pistol upon her with the ulterior purpose of having intercourse with her. The opinion says this was the former rule but was changed in Cromeans v. State, 59 Tex.Cr.R. 611, 129 S.W. 1129, and since then the rule "appears to be that to constitute the offense of assault with intent to rape there must be a present intent on the part of the accused to subject the prosecutrix to his will, with her consent or not, so he may *then, at the very time,* have intercourse with her." (Emphasis supplied.)

We are constrained to look at this question more closely. Particularly we must look at the Cromeans case which is cited in Griffin v. State, supra, as changing the former rule.

In Cromeans v. State, supra, a 16-year-old boy asked a 15-year-old girl to show

1. At the penalty stage of the trial it was shown that appellant had been convicted for violating the Federal Mann Act.

him her sexual organs and to have sexual intercourse with him. She refused both requests. He then grabbed her hand and she broke loose. He then grabbed her arm; she broke loose and ran. The boy was convicted of assault with intent to rape and assessed a two year punishment. On original submission the judgment was affirmed on the authority of McAvoy v. State, 41 Tex.Cr.R. 56, 51 S.W. 928. In McAvoy, this Court upheld an instruction to the jury stating that "the slightest touching of the person of Carrie Race (a girl under 15 years of age), with the ulterior purpose and intent on the part of the defendant at the time to force his male organ into the female organ of the said Carrie Race, would constitute an assault with intent to rape."

In Cromeans, supra, at the second motion for rehearing Special Judge Cobb wrote the opinion reversing the judgment and thereby limiting McAvoy. He stated the Court's holding as follows:

"Solicitation, accompanied by the expectation of consent and laying on of hands without the use of such force as indicates a purpose to obtain intercourse at the very time, does not amount to assault with intent to commit rape on a girl under 15 years of age."

The opinion shows concern with the following: (1) the ages of both parties; (2) the slightness of the assaultive action; and (3) what was intended by this action, especially in connection with the immediately preceding solicitation. The Court pointed out that to slightly assault her intending to obtain her consent was not sufficient to establish the crime.

We do not agree with the Griffin interpretation of the rule in Cromeans. Nor do we understand how the charge in Griffin would authorize what the opinion said it would.

The Cromeans case must be limited to its factual situation and holding. It was there stated:

"We hold that the evidence, taking all the circumstances, the age of the parties, the surroundings, the meagerness of the interview, the few words, the slight act of touching, does not justify the verdict." 129 S.W. at 1135.

If it has ever been the rule that where a man makes an assault by threatening and holding a gun upon a woman with intent to forcibly have intercourse with her against her will, that such intent must be to have intercourse "then, at the very time," it is now no longer the law.

We hold that when an assault is made with intent to forcibly rape a woman, the offense is complete at that time though he planned to take the victim to some other location, even to another county, to carry out his purpose.

To the extent that Griffin v. State, supra, and any other cases are in conflict with the holding in the present case they are overruled.[2]

The charge in the present case adequately sets out the essential elements of an assault with intent to rape.

Ordinarily the accused will be prosecuted in the same county where he attempts to carry out his design.

---

2. Griffin v. State, supra, and other cases cited by the appellant, e. g. Winans v. State, 114 Tex.Cr.R. 182, 24 S.W.2d 421, and Huebsch v. State, 94 Tex.Cr.R. 461, 251 S.W. 1079, do use the words "then, at the very time" and "immediate" to describe when the intent was to be carried out. The real import of those decisions was to connect the assaultive action with an intent to rape. To the extent that this was not their import they are overruled.

Other cases affirmed by this Court indicate that it is unnecessary to intend to carry out the felonious design immediately at the beginning of the assault. See Shelton v. State, 150 Tex.Cr.R. 368, 200 S.W.2d 1004; Fowler v. State, 66 Tex. Cr.R. 500, 148 S.W. 576; Rogers v. State, 65 Tex.Cr.R. 105, 143 S.W. 631.

■■ Next, the appellant contends the evidence was insufficient to show a present intent to rape in Travis County since there he neither made remarks to the prosecutrix concerning any intent to rape nor did he engage in any sexual acts with her in Travis County. As noted above, a present intent to rape must accompany the assaultive action. If there was no intent in Travis County but it arose later in another county, he could not properly be convicted for assault with intent to rape in Travis County.

On direct examination regarding the first alleged sexual acts in a field near Wimberley in Hays County, the following was stated:

"Q. Okay, one other point I would like to clarify. As you were in the field as you testified yesterday, and I believe you stated that the defendant pointed a pistol in your stomach.

"A. Yes, sir.

"Q. And he told you to undress. Was there a conversation at this point?

"A. Well, he asked me if I had any idea that this was going to happen, and I said, well, that I presumed that it was, that I couldn't think of any other reason why he would have stopped me."

The asking of the question plus his acts indicate appellant's intent when he had the prosecutrix enter his car and forced her at gunpoint to come with him, and he inquired whether she realized this intent. She stated that she did. Apparently the jury had no reasonable doubt about appellant's intent to rape when he began his assaultive action in Travis County both from the acts which occurred during the entire episode as well as this testimony. The fact that he forced her to commit sodomy upon him does not show as contended by appellant that he could have taken her for that purpose alone. He could have taken her for both purposes. The fact that he stated that he needed a hostage because he had killed a policeman did not disprove that he assaulted

her with the intent to rape. From the facts and circumstances it was reasonable for the jury to so conclude that the assault with the gun in Travis County was made for the purpose of rape. We find the evidence is sufficient to support their conclusion.

■ Appellant also contends that a completed act of sexual intercourse will not support a conviction for assault with intent to rape. He cites Taylor v. State, 50 Tex.Cr. R. 362, 97 S.W. 94; Bourland v. State, 49 Tex.Cr.R. 197, 93 S.W. 115; Callison v. State, 37 Tex.Cr.R. 211, 39 S.W. 300. These cases describe assault with intent to rape as incomplete rape, but they do not support appellant's contention which was explicitly rejected by this Court in Carr v. State, 158 Tex.Cr.R. 337, 255 S.W.2d 870. See Nielson v. State, Tex.Cr.App., 437 S.W.2d 862, and the cases there cited. No error is shown.

■■ Complaint is made that the trial court erred in refusing to grant a new trial because the jury conducted an experiment and considered evidence not introduced at the trial. At the hearing on the motion for new trial, one of the jurors testified that she had been worried about no bruises on the prosecutrix's ankles from the electric cord which was tied around them. She testified that during their deliberations she took the cord from the coffee pot and had another juror assist her in tying it around her ankles. She stated that "[t]he cord was so thick we couldn't do anything with it, and I thought, well, this is silly, so I took off the cord."

While as a general rule it is improper for a juror to perform experiments or demonstrations in the jury room, it is not every demonstration that calls for a reversal. McLane v. State, Tex.Cr.App., 379 S.W.2d 339. It must be shown that some new fact, hurtful to the appellant, was discovered by the experiment and influenced the jury in the case. Ingram v. State, Tex.Cr.App., 363 S.W.2d 284. No such showing is made in the present case.

█ Next, the appellant contends the carving and former acquittal doctrines bar prosecution in the present case because he was acquitted on a charge of rape arising out of the same transaction.

Under the carving doctrine the State may carve as large an offense out of a single transaction as it can but it must cut only once. Suber v. State, Tex.Cr.App., 440 S.W.2d 293. Appellant contends that the entire episode beginning in Travis County, continuing through the other two counties, and ending in Travis County was a single transaction. Because the prosecutrix was under a continuous assault appellant cites Paschal v. State, 49 Tex.Cr.R. 911, 90 S.W. 878, as authority for his contention. In Paschal, the defendant

". . . threw an orange at his wife, and struck her between the eyes with it, and she fell; . . . he then hit her with his fist, knocked her down, and kicked her, and then threw a rock and hit a cow; . . . he then stamped and choked his wife; . . . the latter then went to the hogpen, and he hit her again; . . . appellant's wife and witness then started to the house, and at the fence appellant caught her again, and cut her clothes; . . . they then went in the house, and he began cutting her clothes with a knife again; . . . he jerked her to the floor and kicked her, and made as if he was going to kick her again; . . . they then went into the south room and appellant then went out into the yard and got a stick, came back into the room, and held the stick up over witness and appellant's wife, but never struck either one of them with it; . . ." Id., at 879.

Paschal had already been convicted for the offense of aggravated assault growing out of the above-stated facts. Hence, this Court stated:

"This is one continuous transaction, within the contemplation of the clause of the Constitution which inhibits a second trial for the same offense; and, being such, the state cannot be permitted to prosecute again for assault with intent to murder. The state can carve the minor part of the transaction and convict on that, or can carve the major part of the transaction and convict on that. However, the state can carve only the one time." Id., at 880.

The various methods of assault by throwing an orange, hitting, cutting clothes, stomping, and the like, with one following almost immediately upon the other and virtually at the same place constitute a single transaction.

In the present case we have a continuous assaultive action during which several other transactions and completed crimes occurred. In Ledesma v. State, 141 Tex.Cr.R. 37, 181 S.W.2d 705, the appellant and another raped the prosecutrix alternatively six times each while the other held a knife to her throat. This Court referred to the "several acts of sexual intercourse" as "transactions" which were "accomplished by one continuous act of force and threats." In the present case the transactions were even more separated in time and place.

The carving doctrine does not preclude a prosecution for assault with intent to rape in Travis County after a prosecution for rape in Williamson County because, even though the prosecutrix was under one continuous act of force and threats, the two offenses were not part of a single transaction.[3] The proof shows more than one assault with intent to rape.

█ The appellant also contends the doctrine of former acquittal bars his being convicted for assault with intent to rape after the acquittal for rape. He relies upon Simpson v. Florida, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971); Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); and Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970).

3. For a general treatment of this and similar doctrines in Texas see Steele, The Doctrine of Multiple Prosecution in Texas, 22 S.W.L.J. 567 (1968).

Ashe, the case most in point for our question, applied the federal doctrine of collateral estoppel to the states and said:

"It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194.

Further, the Supreme Court stated:

"Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' " Id., at 444, 90 S.Ct. at 1194.

The appellant in this case pled former acquittal prior to trial. But no record of the former trial is before this Court to examine so we do not know upon what the jury grounded its verdict. See Ex parte Billy Ray Johnson, Tex.Cr.App., 472 S.W. 2d 156, and Hutchings v. State, Tex.Cr. App., 466 S.W.2d 584. Even without the record we do not see how a verdict of not guilty of rape in Williamson County would determine any issue of ultimate fact precluding a verdict of guilty for assault with intent to rape in Travis County.

■ The appellant also contends the trial court erred when it authorized the jury to convict him if they found that he did make an assault and did then and there intend by *threats* to have carnal knowledge of the prosecutrix. He relies upon Milton v. State, 23 Tex.App. 204, 4 S.W. 574; Taylor v. State, 22 Tex.Cr.R. 529, 3 S.W. 753, for the proposition that the offense of assault with intent to rape cannot be committed by threats or fraud. Appellant admits that there was no objection or special requested charge as required by Articles 36.14 or 36.15, Vernon's Ann.C.C.P. He, however, contends this was fundamental error so that this Court has authority to review the unassigned ground of error in the interest of justice. See Article 40.09, Section 13, V.A.C.C.P. Even if the instruction may have been erroneous, the evidence shows more than threats by appellant toward the prosecutrix so that the error, if preserved, would not be calculated to injure the rights of the appellant. See Article 36.19, V.A.C.C.P. No fundamental error is shown.

■ Finally, appellant complains, again as unassigned error, that the trial court committed reversible error in allowing the prosecutrix to reiterate on rebuttal the testimony she gave on direct examination. No objection was made. The matter is discretionary with the court and not fundamental error. See Lee v. State, 67 Tex.Cr.R. 137, 148 S.W. 706.

The evidence is sufficient to support the conviction.

There is no reversible error. The judgment is affirmed.

ONION, P. J., dissents.

MORRISON, J., dissents to that part of the opinion on carving.

ON MOTION FOR REHEARING

Rehearing denied.

ONION, Presiding Judge (dissenting).

Article 1162, Vernon's Ann.P.C., provides that:

"If any person shall *assault* a woman with *intent to commit the offense of rape,* he shall be confined in the penitentiary for any term of years not less than two." (emphasis supplied)

To constitute an assault with intent to commit rape, the State has the burden of

proving[1] a specific intent to rape,[2] and said burden is not satisfied by evidence showing only a mere possibility of such specific intent.[3] Moreover, the rule has been that there must be a *present intent* to commit rape accompanying the assault,[4] with a few cases stating that there must be a showing that the assailant intended rape "at the very time"[5] or "at once"[6] or "then and there."[7]

Consistent with these authorities the indictment in the instant case charged the appellant with assaulting the prosecutrix "with the intent *then and there* to commit the offense of rape." (emphasis supplied).

The court also instructed the jury in its charge as follows:

"To warrant a conviction of the defendant of an assault with intent to commit the crime of rape, it must appear from the evidence beyond a reasonable doubt, first, that the defendant *at the time and place* alleged in the indictment, made an assault in and upon S——— E———, and second, that the defendant *then and there* had the intent by such assault and by threats, as above defined, to obtain carnal knowledge of the said S——— E——— without her consent and against her will." (emphasis supplied)

In the instant case, the prosecutrix entered the appellant's car at his request after he had identified himself as Sergeant Reed under the circumstances described in the opinion on original submission.

After they had driven a while the appellant stopped the car, placed a gun to the prosecutrix's neck, told her he had needed a hostage as he had killed a policeman and would kill her if necessary. He tied her hands and ankles. This assault took place in Travis County, and it was this assault which is made the basis of this prosecution.

The appellant asked the prosecutrix to suggest a place where he might hide his car, and she suggested Wimberley where she had once lived. They drove the thirty miles from Austin to San Marcos and then toward Wimberley. After a while appellant stopped, smoked a cigarette, drank a beer and took some pills. Later he drove on "out by Devil's Backbone" and stopped in a field. Here he drank some more beer, smoked and consumed more pills and talked to the prosecutrix. Later he asked her to rub his shoulder and then told her to take off her clothing and he undressed. It was at this point that the act of oral sodomy was committed, and this was followed by the act of sexual intercourse and other acts described in the earlier opinion. These sexual acts all took place in Hays County.

The prosecutrix testified that they were in the field approximately one hour before the first sexual relations were had.

1. House v. State, 9 Tex.Cr.R. 567 (Tex. Ct.App.1880); Robertson v. State, 30 Tex.App. 498, 17 S.W. 1068, 1070 (1892).

2. Adams v. State, 215 S.W.2d 327 (Tex. Cr.App.1949); Selby v. State, 103 Tex. Cr.R. 499, 281 S.W. 561 (1928); Robat v. State, 91 Tex.Cr.R. 468, 239 S.W. 966 (1922); Cotton v. State, 52 Tex.Cr.R. 55, 105 S.W. 185 (1907).

3. Adams v. State, supra note 2; Winans v. State, 114 Tex.Cr.R. 182, 24 S.W.2d 421 (1929); Selby v. State, supra note 2; Robat v. State, supra note 2; Cotton v. State, supra note 2.

4. Willis v. State, 473 S.W.2d 200, 202 (Tex.Cr.App.1971); Maynard v. State, 154 Tex.Cr.R. 594, 228 S.W.2d 185, 187 (1950); Bell v. State, 135 Tex.Cr.R.

651, 122 S.W.2d 630 (1938); Munoz v. State, 132 Tex.Cr.R. 218, 104 S.W.2d 25 (1937); Bartlett v. State, 117 Tex. Cr.R. 468, 38 S.W.2d 103, 108 (1931); Williams v. State, 106 Tex.Cr.R. 183, 291 S.W. 893 (1927); Grant v. State, 105 Tex.Cr.R. 193, 287 S.W. 254 (1926); Vinsen v. State, 102 Tex.Cr.R. 235, 277 S.W. 644 (1925); Stoker v. State, 93 Tex.Cr.R. 24, 245 S.W. 444 (1922).

5. Cromeans v. State, 59 Tex.Cr.R. 611, 129 S.W. 1129 (1910); Griffin v. State, 151 Tex.Cr.R. 185, 206 S.W.2d 259 (1947).

6. Huebsch v. State, 94 Tex.Cr.R. 461, 251 S.W. 1079, 1081 (1923).

7. Bell v. State, supra note 4.

As stated in the opinion on original submission,

". . . As noted above, a present intent to rape must accompany the assaultive action. If there was no intent in Travis County but it arose later in another county, he could not properly be convicted for assault with intent to rape in Travis County."

In order to find the requisite intent in Travis County the majority opinion calls attention to the prosecutrix's testimony that as she was told to undress and just prior to the act of oral sodomy, appellant asked her if she "had any idea that this was going to happen." She replied, "[T]hat I presumed that it was, that I couldn't think of any other reason why he would have stopped me."

The majority has seized upon this conversation in Hays County as evidence of appellant's intent at the time of the assault in Travis County. The prosecutrix's presumption certainly cannot be utilized for such purpose. This leaves only appellant's inquiry directed to the prosecutrix while in Hays County, and the testimony never did clarify what "this" in the question had reference to—whether it was to the act of undressing which was then occurring, the act of sodomy which followed or the subsequent sexual intercourse or all of these.

In this regard the prosecutrix's testimony on cross examination is highly significant.

"Q Mrs. E——————, tell me every sexual overture Ken Douthit made to you in Travis County, Texas.

"A None in Travis County.

"Q Did he put a hand on you?

"A Yes, sir, he did.

"Q And tie you up? Is that correct?

"A Yes, sir.

"Q But sexually, he did not—

"A No, sir.

"Q At all?

"A No, sir.

". . . .

"Q At the time you left Travis County, had you had any indication that you were —that he was going to have sexual relations with you, any indication by word or sign?

"A I didn't know.

"Q Had he said anything?

"A No, sir.

"Q Had he done anything that indicated to you he was about to have sexual relations with you?

"A Not that I can recall."

I cannot agree that the evidence, considered in the light most favorable to the jury's verdict, shows any more than a mere possibility of the existence of the requisite intent, and this mere possibility is not sufficient to sustain the conviction. Because the evidence relied on to show the requisite intent in Travis County is circumstantial, proof amounting to only a strong suspicion or mere probability is not sufficient. The proof in this case does not exclude every reasonable hypothesis except the guilt of the accused for the offense charged. Culmore v. State, 447 S.W.2d 915 (Tex.Cr.App. 1969).

As pointed out in the appellant's brief the facts of this case present a brutal criminal transaction, but these facts do not deprive the appellant of his right to have the State prove the crime alleged in the indictment beyond a reasonable doubt. I agree. As this court said in Robat v. State, 91 Tex.Cr. R. 468, 239 S.W. 966 (1922), "[t]he fact that the conduct attributed to the appellant was atrocious and merited punishment cannot take the place of proof establishing the elements of an assault with intent to rape."

There is direct evidence in the record tending to show that the following crimes were committed by appellant in Travis County: (1) assault with a prohibited weapon (Article 1151, Vernon's Ann.P.C.); (2) aggravated assault (Article 1148, Vernon's Ann.P.C.); and (3) false imprisonment (Article 1169, Vernon's Ann.P.C.). Further, there is direct evidence that the following offenses occurred in Hays County: (1) false imprisonment (Article 1169, Vernon's Ann.P.C.); (2) aggravated assault (Article 1148, Vernon's Ann.P.C.); (3) assault with a prohibited weapon (Article 1151, Vernon's Ann.P.C.); (4) sodomy (Article 524, Vernon's Ann.P.C.), and (5) rape (Article 1189, Vernon's Ann.P.C.). The record also reflects evidence of a rape in Williamson County for which appellant was tried and acquitted.

The State chose to prosecute appellant in Travis County for the offense charged in the indictment and was bound by the requirements of the laws regarding such offense. For these reasons I cannot agree to overrule appellant's motion for rehearing and to affirm the conviction.

Further, I have grave doubts as to the new rule established by the majority in overruling Griffin v. State, supra, and Cromeans v. State, supra. The law as announced by the majority now returns to the "ulterior purpose" principle first stated as dictum in McAvoy v. State, 41 Tex.Cr. R. 56, 51 S.W. 928 (1899). As I read the majority opinion, it is sufficient for there to be an assault coupled with a "present intent" to rape the victim at some future occasion, i. e., a present intention to do a future act. The law has been well-settled since *Griffin*, and I see no reason to change it now.

Still further, Ledesma v. State, 147 Tex. Cr.R. 37, 181 S.W.2d 705 (1944), seems to have been misapplied in answering the appellant's contention regarding the State's right to carve but one time. *Ledesma* dealt with the question of whether the trial court should have required the State to elect upon which of several acts the State relied for conviction. It does not stand for the proposition that appellant could be tried and separately convicted for each act of sexual intercourse.

I dissent.

MORRISON, J., joins in this dissent.

