### GEORGE MARTHALL v. THE STATE.

*No. 928. Decided December 12.*

1. **Attempt to Commit Crime—Assault.**—It is practically well settled, that where an attempt is made to execute an intention, which falls short of its consummation, a crime is committed; but *Held*, that this rule can not apply in cases of assault, unless the assault is coupled with an ability to commit a battery (Penal Code, article 484); and if the assailant be at such distance from the party assailed that he could not commit a battery or reach the person of the latter by the means used, he is not guilty of an assault. Penal Code, art. 489, subdivs. 2, 3.

2. **Assault with Intent to Rape.**—In order to constitute the crime of assault with intent to commit rape, it is essential that an assault be made by a party who is in a position to commit a battery, and this must be coupled with an intent to ravish.

3. **Moral Turpitude Not a Crime, Unless, etc.**—It is beyond the province of courts in this State to deal with moral turpitude, which has not been made an offense and a punishment prescribed therefor by our Penal Code.

4. **Assault with Intent to Commit Rape—Fact Case.**—See opinion for facts stated which are held by the court to be insufficient to support a conviction for assault with intent to commit rape.

APPEAL from the District Court of Erath. Tried below before Hon. J. S. STRAUGHAN.

Appellant was indicted for an assault with intent to commit rape upon one Alice Smith, and at his trial was convicted of that offense, his punishment being assessed at four years' imprisonment in the penitentiary.

The case is fully shown by the testimony of the prosecutrix, which is as follows:

Alice Smith testified: "My name is Alice Smith. I am wife of W. A. Smith. I live in Stephenville, Erath County, Texas. So lived August 9, 1893. On said last named date I left my house between 1 o'clock and 2 o'clock p. m. to go to Pipe Hale's house, a distance of about one mile. Hale lives in a southeast direction from where I live. I left my house and traveled a trailway that leads between Henderson's and Sindy Funk's. As I was in the trail, under the bluff, near where said trail crosses the Bosque River, and about 250 yards from my house, I heard a noise like brush rolling behind me, and looked back to see what it was, and saw defendant. He had come off the bluff immediately behind me. His pants were unfastened, his person exposed, and straight. I ran on a little way, then turned back, thinking I could get back home; but when I was within about four steps of defendant, he stepped out in front of me, and said, 'No you won't.' I then turned and ran on in the direction I was previously going. When I got to the top of the bluff, a distance of about fifty yards, I looked back and saw defendant. He was standing looking at me, but had not followed me. I then walked on up the trail to where Aunt Sindy Funk lives, intending to go in there, but the doors were closed, and I passed on. Sindy Funk lives about 150 yards south of where the trail gets to the top of the south bluff. I saw defendant's head coming over and around the edge of the bluff before I got to Sindy Funk's, but I knew he lived near, and west of Aunt Sindy's, and I supposed he was going to his home. It is about 200 yards from Aunt Sindy's to the timber on the trail that I was traveling in. I walked from her house to near the edge of the timber, then looked back, and discovered that defendant was following me, and was within about 100 yards of me. He was coming in a walk. I then stooped down and tore my shoes from my feet, and ran in my stocking feet as fast as I could from there all the way through the timber and to Ridgway's field, a distance of 400 or 500 yards. Defendant ran after me, and when I got to Ridgway's field he was within six steps of me. He had gained the 100 yards on

me in coming through the timber, and I ran as fast as I could all the way through. As I went in Ridgway's field defendant stopped. I could then see Hale's house. I did not stop running, but kept on till I got into Hale's field, a distance of about 200 yards from Ridgway's field. I saw defendant standing looking at me as I went into Hale's field. Saw him no more till that night, when he was arrested and brought to me for identification. When I got to Hale's I was scared and out of breath. As soon as I could, I told Mrs. Maggie Hale what had happened to me. I told her I did not know defendant's name, but knew his face. I also told her that he was a slender, black negro; wore a black flapped hat, dark pants, and a white undershirt, and had on no top shirt. I gave defendant no permission or consent to assault me; he did it without my permission or consent. All this occurred in Erath County, Texas, about August 9, 1893."

Cross-examined: "I did not know defendant's name, but knew his face; had known him about twelve months. There are other negroes about his age that live in that vicinity, but I knew this one from them; none of them are exactly like him. He had no axe or any other weapon with him, when he ran me, that I saw. I know where he lives, and I passed within about 100 yards of his house in going to Hale's house. I did not go by Beech's mill when I went to Hale's, but I went the trail that led out by Sindy Funk's. Beech's mill is in a southwesterly direction, and about 400 yards from where I live. I went in a southeasterly direction and did not go nearer said mill than I was when I started. I did not go buggy riding that evening with Mrs. Hale, but she brought me home in her buggy, because I was afraid to walk home. The constable, Mr. Pipe Hale, came to me about sundown, and I told him what had occurred to me; described the negro to him; told him that he wore a black flapped hat, dark colored pants, and white undershirt; no top shirt. That he was a black, slender negro. Soon after that, my husband and said constable came to my house with defendant, and I recognized him as the man that had assaulted me. He at that time had on the same clothes that he wore when he ran me. At the time I heard the noise behind me under the bluff and looked back and saw a negro with his person exposed, I merely glanced at him; did not look at him carefully. He was then within about six steps of me; but when I turned to go back, and undertook to pass him, I then noticed him closely. He did not take hold of me nor attempt to strike me at the time I tried to pass back by him, because I whirled and ran when I was no nearer to him than four steps. He stepped in front of me and said to me, 'No you won't.' I do not know what defendant meant by saying, 'No you won't.' [At this point witness raised both her hands horizontally, stretched her arms, and showed how defendant acted when she started to pass him.] I am not certain as to the time of day I left home to go to Hale's, but know it was immediately after I had cleared the dinner dishes away. I think it was between 1 and 2 o'clock p. m."

. *N. L. Cooper*, for appellant.

*R. L. Henry*, Assistant·Attorney-General, for the State.

DAVIDSON, JUDGE.—This conviction was for assault with intent to rape.   About 1 o'clock in the evening, while en route to a neighbor's, the prosecutrix was passing a bluff of the creek, when appellant suddenly approached her, with his person exposed.   She ran a short distance, turned, and sought to return home, when appellant stepped in front of, and said to her, "No you don't."   They were four steps apart.   She then pursued her journey in the direction of and to her neighbor's residence.   Appellant followed slowly until she approached some timbers.   As she reached the timber she ran, and was rapidly pursued until she reached and entered the inclosure of Mrs. Ridgway, where appellant stopped.   At this point he approached within about six steps of the prosecutrix.   When she reached the timber she was about 100 yards in advance of her pursuer.   He displayed no arms, and the only means by which he could have made an assault was his hands.   His defensive theories were alibi and mistaken identity; and his contention here is, the want of sufficient testimony to sustain the conviction.

This appeal hinges primarily upon the sufficiency of the evidence to show that an assault was committed.   Where an attempt is made to execute an intention which falls short of its consummation, a crime is committed.   Upon this proposition the authorities are practically unanimous.   This is true also under. our Penal Code.   As this issue was not submitted under the charge on the trial, we pretermit a discussion of the question.   The testimony excludes the idea that a battery was inflicted.   Do the facts show an assault?   We think not.

An assault, under our code, is "any attempt to commit a battery, or any threatening gesture showing in itself, or by words accompanying it, an immediate intention, coupled with an ability to commit a battery."   Penal Code, art. 484.

In order to constitute his acts an assault, appellant must have been within such distance of the prosecutrix as to place it within his power to commit a battery upon her by the use of the means with which he attempted it.   Penal Code, art. 489, subdiv. 2.   If he was at such a distance from her as that he could not reach her person by use of the means employed, he is not guilty of an assault.   Penal Code, art. 489, subdiv. 3.

Now, what were the means employed by appellant?   The record is silent upon the question.   He was at no time nearer her than four steps.   He stepped in front of, and said to her, as she undertook to return home, "No you don't."   He did not even then seek to take hold of her, though nothing prevented his doing so.   He could not have possibly reached her person with any portion of his body.   We are not to be understood as holding that if he had been in a position to

commit the battery he would not be guilty of assault to rape.    In order to constitute the offense of assault with intent to commit the crime of rape, it is essential that an assault be made, and this must be coupled with an intent to ravish.

It has been held, that the chasing by a man of a woman who is alone in a private place does not necessarily raise an inference of an intent to rape.    The State v. Donovan, 61 Iowa, 369.    It has been held, in this State, that where the accused entered the room of the prosecutrix and called her by her given name, and, when she screamed, fled, that this was not sufficient to support a conviction for an assault with intent to rape.    Carroll v. The State, 24 Texas Crim. App., 366.    And this court recently held, that where the defendant entered the bedroom and touched the foot of the prosecutrix, and being discovered, fled, was not sufficient to constitute this crime.    Mitchell v. The State, 33 Texas Crim. Rep., 575.    See also Steinke v. The State, 33 Texas Crim. Rep., 65; Fields v. The State, 24 S. W. Rep., 907.

It is beyond our province to deal with moral turpitude when not constituting a crime, and we have no offenses in this State other than as prescribed by the Penal Code.    However outrageous or shocking to the more refined sensibilities of our nature the conduct may be, such facts do not constitute crime, and are not the subject of legal punishment unless denounced by the law-making power as being criminal and a punishment therefor has been prescribed.    Offenses in this State are the result of legal enactment, and not of violated moral ethics.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.