### JAMES COTTON v. THE STATE.

No. 3801.    Decided November 6, 1907.

**Assault With Intent to Rape—Specific Intent to Rape—Force.**

Upon trial for an assault with intent to commit rape the evidence must show a specific intent to rape, and in a case where force is alleged, must go beyond the mere possibility of such intent; and where the only force used by the accused was simply to place his hand upon the .calf of prosecutrix' leg, at night, she being in bed in a room with her little sister, and three younger brothers, in another bed in the same room, with an open door-way into the room where her parents were within ten feet of her, such assault, if it was an assault, could not reasonably be supposed sufficient to overcome resistance. See opinion for facts stated not sufficient to authorize a conviction of assault with intent to commit rape by force.

Appeal from the District Court of Milam. Tried before the Hon. J. C. Scott.

Appeal from a conviction of assault with intent to commit rape; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*U. S. Hearrell and Monta J. Moore,* for appellant.—On the question of intent and force; counsel cited some of the authorities stated in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was charged with making an assault with intent to commit the crime of rape by force upon Willie K. Smith. She testified that on the night of the 28th of October she was sleeping in the same room with her brothers and little sister, there being two beds in the room, she and her little sister occupy-

ing one of them. The younger sister is five years of age. The number of her brothers occupying the room was three, the oldest being 16 years of age, and "looks as large as a grown man." Adjoining this was another room in which slept her father and mother, with an open door between them. The lamp in her father and mother's room was burning, and shining so as to throw light on the foot of the bed she occupied. Some one entered her room before daylight, and placed his hand on the calf of her leg, which awakened her. In this connection, she states, as follows: "I woke up and saw a negro standing at the foot of my bed. He had his hands under the cover and under my gown and on my leg. I raised up in the bed. I saw the defendant's face by the aid of the lamp light. I can tell the jury that negro is the one that I saw standing at the foot of my bed. He looks like the same one that was standing at the bed. The face of the man that I saw was light yellow. I called papa when I rose up. Then the man ran. He was stooping and run out of the room into a shed room.  *  *  *  Papa got up at once when I called. I told him there was a negro in the house with a red shirt on. The man had on a black crushed hat. His shirt was a light red.  *  *  *  I am afraid of negroes. My mother' and father are afraid of negroes. We never had any negroes working for us. My mother wanted the light burning at night for fear some negro might injure me or herself. I thought I saw a negro once before sometime last winter looking through the window. That was one night and the light was burning that night. It was about midnight; that was a black looking negro. I just saw a little of his face. My brother was in the room that night. I screamed out and told papa that I saw a negro. Nobody has been talking to me since the last trial.  *  *  *  I dreamed one time and woke up and holloed for papa and told him there was a negro in the room. That was the time I seen him at the window. I have dreamed on just one occasion. That is when I thought the man was at the window." On a former trial this witness testified that the party who was in her room was sitting on the foot of the bed with his hand on her leg. This time she testified that he was squatting down by the bed. The father testifies, in substance, that he came in the room when his daughter screamed, and heard her story and went to the only place of egress, which was a window in the shed room, and looked about the window and found no evidence where anybody had gotten in or out of the window,—no tracks. The bottom of the window was some four or five feet from the ground. No one heard any noise of the entrance or exit of the party claimed to have been in the house, and the nearest point to the house at which any tracks were found was about sixty or seventy yards. The father immediately armed himself and went in pursuit of the supposed assaulting party; went to the residence of a neighbor where some negroes were employed, and on reaching this point inquired for a low, heavy set, black negro, and he states that his wife was very easily awakened; any extra noise would wake her. He further states no one heard this negro coming in or going out, and there was

no way for him to get in or go out except through the window. When the defendant was first seen the next morning, he did not have on a red shirt, but a jumper and blue shirt. Tracks were found in the field sixty or seventy yards from the house; the tracks were not compared with the defendant's or with any shoes that he wore. The tracks were not even measured. In regard to the description given by the father of the supposed burglar at the time he went to the residence of Mr. Foster looking for the negro early in the morning after the alleged assault, he asked whether either of the negroes was a heavy set black negro and wore a crushed hat and red shirt. Foster told him no. Smith then went off. This is practically the substance of the case. There are a few little details with reference to the identity of the negro that are not inserted, but in reference to the attendant facts of the assault, we believe, substantially, the case has been stated.

Without going into a discussion as to the sufficiency of the evidence or identification, we are of opinion this evidence does not show an assault with intent to commit the crime of rape by force. In order to constitute this offense the consent of the assaulted female must be wanting and the assault by the accused must be of that character and cogency that shows, on his part, a purpose to have intercourse with the woman despite any resistance she might make under the circumstances and requirements of the case. The girl's testimony is all that we have in reference to the fact of the assault; she states that during the night, and perhaps not a great while before daylight, she was aroused by some one having his hand on the calf of her leg that awakened her; she sat up, saw that it was a negro, the light shining on him across the foot of her bed from her father's room, and holloed. The alleged assailant fled. In the room was her sister and three brothers, the older one as large as a grown man, and in the adjoining room her father and mother, within six or eight feet, as the testimony shows; at least within ten feet of her. However outrageous the conduct may have been, if perpetrated by the defendant, or any other man, we do not find in this testimony sufficient evidence to indicate he intended to have carnal intercourse with the girl by force and very doubtful without her consent. Under our statutes and decisions construing it, this case does not rise to the dignity of an assault with intent to commit rape by force. For some of the authorities see Sirmons v. State, 44 Texas Crim. Rep., 488; Graybill v. State, 41 Texas Crim. Rep., 286; Hancock v. State, 47 S. W. Rep., 466; and on the point that it is essential that a specific intent to rape be established by the evidence and that it must go beyond the mere possibility of such intent, see House v. State, 9 Texas Crim. App., 567; Saddler v. State, 12 Texas Crim. App., 194–196; Peterson v. State, 14 Texas Crim. App., 162–535; Jones v. State, 18 Texas Crim. App., 485; Moore v. State, 20 Texas Crim. App., 275; Pless v. State, 23 Texas Crim. App., 73; Carroll v. State, 34 Texas Crim. App., 366; Robertson v. State, 30 Texas Crim. App., 498; Shields v. State, 32 Texas Crim. Rep., 498; Steinke v. State, 33 Texas Crim. Rep., 65;

Porter v. State, 33 Texas Crim. Rep., 385; Marthall v. State, 34 Texas Crim. Rep., 22; Mathews v. State, 34 Texas Crim. Rep., 479; Dockery v. State, 35 Texas Crim. Rep., 487; and Ellenberg v. State, 36 Texas Crim. Rep., 139, as well as the statute itself, which provides that rape is constituted by the carnal knowledge of a woman without her consent, obtained by force, threats or fraud. See article 633, Penal Code. Article 634, Penal Code is as follows: "The definition of 'force' as applicable to assault and battery, applies also to the crime of rape, and it must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties, and other circumstances of the case." This was charged to have been an assault to rape by force. Judge White, in his Annotated Penal Code, has, in paragraph 1103, collated some of the authorities. That this may have been an assault, and if defendant was in the house, an outrageous course of conduct on his part, but the facts do not elevate it to that position required by said article 634, that the assault was such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case. Here we have a girl in a room with her sister and three brothers, with an open door-way into the room where her father and mother were within ten feet of her. The only force used was simply placing his hand upon the calf of her leg, and upon this being discovered he fled. The environments of the girl at the time were some of the attendant circumstances of the case. We are of opinion that this case does not meet the requirements of the law.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Henderson, Judge, absent.