## Shelva Southerland and Reece Pruitt v. The State.

### No. 11,999.   Delivered November 28, 1928.

The opinion states the case.

*Carrigan, Britain, Morgan and King* of Wichita Falls, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, Judge.—Offense, assault with intent to rape; penalty, three years.

The sufficiency of the evidence to sustain the conviction is vigorously questioned. Prosecutrix and appellants were all youths of about the age of nineteen years. They were associates and friends prior to the alleged occurrence. On the afternoon of the day of the alleged offense prosecutrix was visiting her friend, Miss Max Craig. Miss Craig testified that appellants came to her house in the late afternoon; that prosecutrix had intended to stay all night but upon the arrival of appellants she asked them to take her home in their car. We quote literally from the testimony of the prosecutrix, sufficiently, we think, to illustrate the law point involved:

"These men were in a car. * * * I said I wished it was not raining so I could go home, and they said they would take me. * * * I asked them where they were going, and they said they were going for a

little drive and I told them I believed we better drive back home. They said O, it was early, nobody was going to say anything about it. * * * They went and turned toward Winfield and went that road about a mile. *.* * They stopped the car and Reece put out the light. It was then kind of getting dark. * * * The first thing then Reece put his arm around me, and I told him to take it down, and he did, and Shelva asked me who was my sweetheart, and I told him I did not have any, and I says 'Shelva somebody will come along here, and you best take me back home,' and they would not do it; so he asked me if I loved anybody, Shelva did, and I told him No, I didn't, and he said, 'Well, you love me, don't you,' and I told him No, I didn't, and for him not to ask me that either; so Reece asked me if I loved him, and I said No. * * * So Shelva asked me if I would do anything to him before I got back to town, and I told him No, I would not, and he better take me back, it would cause serious trouble, but instead he tried to put his arm around me and I made him take it down, and Reece got over there by the car, said he would walk down the road a little ways. * * * So Shelva asked me if I would take a little course with him, and I told him No, and I started to jump out of the car, and he says 'O, come back, I will let you alone,' but I got out of the car and ran about 12 feet I guess and by that time Reece caught hold of me and he was going to bring me back up to the car. I don't know exactly how he caught hold of me, only I know he put his arm on my shoulder. * * * and says 'If you don't with Shelva, I have an interest in it; if you don't with him we will both make you come across,' and I told him to go to Hell. * * * They said I was a little baby, they would take me home. * * * So Reece sat there a minute, he and Shelva, and they asked me again if I was going to and at that time Shelva says 'You are going to before you get back home. Says 'Nobody will ever know it,' and I told him they would, and I says 'I am not going to do anything like that, so Reece got out of the car and this time he walked down the road. Shelva started to do something * * * and I got out of the car. * * * Reece caught me and Shelva came out and says 'Now you are going back up there,' * * * so instead of them leaving me alone Shelva caught hold of my throat, and Reece going along behind. * * * Both had hold of me. They got me almost by the car. During that period of time I kicked Shelva and told him I would just slap the devil out of him. I was almost so mad I could have cursed, myself. So he got in the car and he tried to make me stay in the car and I would not do it, so Reece says 'Well, you have

got to come across with Shelva'—that was the third time he said it; 'if you don't we will both make you.' Shelva got me up against the car and he tried to take my clothes down off me. * * * I tried my best to push him away so he could not. * * * so Shelva got me up against the car then and he pulled my underclothes down below my knees. * * * and tried to make me do that. * * * and I says 'Shelva, you have got to quit right now.' He says 'No, I am not going to do it,' so I kept up until I threw him off and he says 'If you are that damn contrary, get in the car and we will take you home,' and Reece says 'Yes, take the little baby home to her mother.' I says 'I will show you * * * you better put me in the car and take me home. * * * They says 'all right, don't you say anything.' "

The testimony shows that the parties then took prosecutrix home and that she said nothing about this occurrence for eight days. She testified:

"I knew it would be harder for me unless I told it myself. That was part of the reason I told it. I told it for my own protection."

We have quoted about as strong testimony as is found in the record, omitting such parts of the cross-examination as materially weakened this evidence.

The test of the sufficiency of the evidence in cases of this character has been stated in somewhat variant language but its meaning is about the same. The Court recognized the correct rule and charged the jury in part as follows:

"Force, as applicable to assault and battery, applies also to rape, and it must have been such as might reasonably have been supposed to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case."

"In order to constitute the offense of assault with intent to rape, the following elements must concur: (a) There must be an assault accompanied with the specific intention to rape. (b) The assault must be made with the specific intention to have carnal knowledge of the woman by force without her consent and against her will, and (e) such intention must exist to use such force as might be necessary to overcome such resistance, as the woman could make."

Does the evidence in this case show an intent to have intercourse with the prosecutrix despite her resistance? Do the facts show an intention to secure the consent of the prosecutrix to an act of intercourse or do they show an intent to use sufficient force to accomplish their purpose notwithstanding any resistance the prosecutrix might make? It has been said:

"A party on trial is not presumed to be guilty because the facts are consistent with his guilt, but they must be inconsistent with his innocence."

These rules applicable to cases of this kind have been ofttimes stated. One of the latest of these cases is that of Vinsen v. State, 102 Tex. Crim. Rep. 235. See also Branch's P. C. Sec. 1700, for a full collation of authorities; also Cotton v. State, 105 S. W. 185.

It is to be noted that appellants desisted and complied with prosecutrix's request to take her home and that she did not at that time treat the matter seriously enough to report it. That the appellants have been guilty of outrageous conduct is placed beyond question by her evidence, and under it they may be guilty of another offense, but we do not believe that the facts of this case are sufficient to meet the requirements of the law as to the offense charged. They are not inconsistent with the inference that appellants only intended to gain carnal favor of prosecutrix with her consent and fall short, we think, of showing an intent to have intercourse despite any resistance the prosecutrix might offer.

Because of the insufficiency of the evidence, the judgment of the trial court is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.