SYLVESTER LACEY V. THE STATE.

No. 20231.  Delivered March 1, 1939.
Rehearing Denied May 17, 1939.

The opinion states the case.

*C. A. Holloway,* of Clarksville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted by the jury of an assault with intent to rape on the person of Mary Christine Parker, and sentenced to serve a term of twenty years in the state penitentiary.

It is necessary to set out the revolting facts in order that this opinion may be understood.

Mary Christine Parker was a little negro girl six years old, so her mother testified, and the appellant seems to be some

kind of a doctor, of just what school of medicine it is not shown. The appellant lived in a tent with his wife near an old saw-mill, and on the date of this alleged occurrence Mrs. Lacey, appellant's wife, had requested Mary Christine's mother to allow the child to stay with Mrs. Lacey while appellant went to Paris on business, and visited some fifteen patients. This permission was granted, and the little girl went to the Lacey's tent. We quote from her testimony as follows: "I know Mr. Lacey, that man sitting right over there. (Points to defendant.) Mr. Lacey lives over there in that tent over there by that saw-dust pile. He has a car, and I have ridden in his car. Mr. Lacey took me riding in his car. He took me down there in that branch. There was no one with me besides him. Mr. Lacey pulled down my bloomers and he pulled up my dress, and he got on top of me and twisted. He unbuttoned his pants and got out his thing, and he put it right down there. (Indicating). We were down there in that creek when he did that. That is out on the new highway. He unbuttoned his pants and got out his thing and got on top of me and put it right down there. Mr. Lacey got up off of me when he saw Mr. Hubert Wharton. Mr. Hubert was not coming down there where we were, and he did not come down there where we were. When Mr. Lacey got up off of me he told me not to tell nothin'."

Again: "Mr. Lacey gave me some money, and he has carried me riding in his car. He has taken me riding before this time, before the time he tittied me."

Mr. Wharton lived about 150 yards from the Lacey tent. He saw appellant and the little girl get in appellant's car at the Lacey camp and go out on the highway and park the car down by a nearby creek, and the witness followed them, and saw the little girl come out of a bois d'arc thicket, and then appellant came out of this thicket, and he was buttoning up his pants when he came out. Appellant did not say anything, and he and the little girl got in the car and came back to appellant's camp. The witness then went into the thicket and found a place in the grass and weeds that looked like some one had been wallowing around on the ground, and found there a little brown hat that was later identified as the little girl's hat. The appellant and the little girl were in the thicket about ten minutes. Dr. W. L. Durham, a practicing physician, testified that he had occasion to examine this little girl sometime in July of the year of the trial; he made an examination of her female parts at the request of the officers to see whether or not she had been raped, and that he did not find any indication of penetration of her female parts. He did not find any

evidence or indication that she had been tampered with. He made a thorough examination.

Mary Christine testified that immediately upon being taken back by Mr. Lacey to his camp, she told Mrs. Lacey, in her husband's presence, what the husband had done to her, and also told her own mother and father what he had done as soon as she got home.

The appellant complains in his bill of exceptions No. 1 that because of the tender age of the complaining witness, Mary Christine Parker, she was incompetent to testify, no further reason being given concerning her incompetency. It appears from the statement of facts that this little negro girl was an exceptionally bright child, and from the court's interrogation of her outside the presence of the jury she evidenced a degree of intelligence and a conception of the sanctity of an oath not often found in one of such tender years. She testified on such examination: "I know what it means to tell the truth, and I know what a story is. I know what happens to little girls that tell stories. The booger man gets them, and they are put in jail too. If the booger man gets them he burns them up, and I do not want to be burned up. I know if I tell a story I will be burned up." At the request of the court she recited her a-b-c's correctly.

In the case of Johnson v. State, 1 Texas App. Rep. 609, we held that a child who testified she went to Sunday School every Sunday, and knew that it was wrong to tell a story, was a competent witness. Also see Flannery v. State, 117 S. W. (2d) 1111 for a collation of authorities; also Branch's Penal Code, p. 993. This negro girl showed a reasonable degree of knowledge relative to the sanctity of an oath, and appears to us to be qualified to give testimony under the pains and penalties of perjury, and the court did not err in admitting her testimony.

Bill of exceptions No. 3 complains because the trial court failed and refused to charge the jury that the complaining witness was an accomplice to the commission of this offense, and that it was necessary that her testimony herein be corroborated before a conviction could be had. Such is not the law. The facts herein show that she made an immediate outcry, telling not only her father and mother, but also appellant's wife about the matter on the first opportunity, as herein set forth.

This complainant is incapable of becoming an accomplice

to the crime of rape or an assault with intent to commit rape; she could not give her consent because of her tender years. She may have willingly entered into whatever sexual act or attempted sexual act there might have been, and yet her consent thereto would have been immaterial, since under the law she could not give her consent.

That which causes us most concern is the sufficiency of the testimony to show that this man made an assault upon this child with an intent to commit the crime of rape. There is naught in the record to show that he intended to penetrate the body of this child with his own private organ; in truth the facts seem to show to the contrary. She tells us that he placed his "thing down here (indicating) but where she indicated is not further shown by the record; that he did get on top of her is shown, but again she does not attempt to say what he did, other than that he "twisted". The doctor who examined her said there was no sign of any tampering with her private parts, and no bruises in that region, although the doctor had made a thorough examination of her parts.

While reluctant to hold that this testimony is insufficient, it does not seem to us to be sufficient to say that it shows beyond a reasonable doubt that appellant made an assault upon this child with an intent to have carnal intercourse with her. The child does not give any oral or physical evidence of there having been made any attempt at penetration upon her body, nor any effort to do so by the appellant. That he gratified the erotic desires of a pervert seems to us to be the more reasonable conclusion rather than that he intended to have carnal knowledge of this child of tender years, and such seems to be borne out by her testimony. That he may have been guilty of an aggravated assault is clear to us, but it is not sufficiently herein shown that he made an assault upon this child with an intent to rape her. We do not know whether the graver offense can be developed upon another trial. We only say that according to the testimony adduced herein we are of the opinion that it is not sufficient to establish the offense of an assault with intent to rape.

The judgment is accordingly reversed and the cause remanded.

### ON MOTION FOR REHEARING.

HAWKINS, Judge.
By the Honorable District Attorney the State files a motion

for rehearing urging that the opinion in this case is contrary to Brown v. State, 129 Tex. Cr. R. 82, 83 S. W. (2d) 678, and Douglass v. State, 132 Tex. Cr. R. 258, 103 S. W. (2d) 745. It will be noted that in the cases mentioned the girls who were the objects of the assaults were resisting the advances being made, while in this case the little girl seemed to be submissive to appellant's advances, notwithstanding which the evidence fails to show that he ever made any effort to insert his privates into hers. He had opportunity to do this before the approach of a party interrupted his lascivious conduct. His acts cannot be too severely condemned but we still are of opinion they fell short of assault to rape.

The State's motion for rehearing is overruled.