## LEWIS LAWSON V. STATE.

No. 24313. March 23, 1949.

*W. H. Eyssen, Jr.,* Hamlin, and *H. G. Andrews, Jr.,* Stamford, for appellant.

*Ernest S. Goens,* State's Attorney, Austin, for the state.

GRAVES, Judge.

Appellant was a Negro man, married, and living in Anson. He was charged with an assault with intent to rape a woman, the mother of a 2-year-old baby, and married to a deaf mute. Upon his conviction, appellant was given a sentence of two years in the penitentiary.

The prosecutrix and her family lived in the last house on a certain street in an unsettled portion of Anson. Her baby was sick. Her husband had gone to work and she was in bed with the child. Her bed was next to the wall and near a window on the west side of the house. Appellant came to this window and saw her. He then told her that he had been watching her for quite a while. He knew that her husband could not hear her. He told her that he believed that she had something that he would like and he knew that he had something she would like; that if he could just get in to see her, he would show her what he had; that he believed she would like it. There was no road or path where appellant stood, and it was on the lady's premises. She was frightened and scared of the appellant. He then told her to pull the cover down and let him see what she had;

that he would like to see it. He was right up at the window screen at the time. She refused to do so and told him to leave. He then departed, telling her that he would return and that she would change her mind. He returned that evening while her husband was still away at work and tried to get her to come out of the house which was locked. She refused to do so and he then returned to the front of the house, opened his pants, exposed his male organ, and grinned at her. Upon leaving the premises, he told her that he intended to sleep with her. She reported this conduct to the officers, but she did not know the appellant's name. They directed her to find out his name. She returned to her home in company with her grandmother. Appellant again appeared at her home the next morning and passed the same window. In the meantime, the screen thereon had been cut by someone and he looked in the window but the prosecutrix was not there. She was in the kitchen, whereupon appellant came to the outside thereof and started a conversation with her. The kitchen door being locked, she started into the front part of the house. The grandmother then came into view, whereupon the appellant whirled around and started away. The grandmother told her to get his name. She asked appellant what his name was and he replied it was Lewis Lawson, and if she could not think of that, to call him Joe Lewis, and said, "I'll be seeing you honey," as he left.

Appellant told a rather rambling story, corroborating much of the state's theory but denying any intent to rape.

It is our opinion that the testimony herein is not sufficient to show appellant's intention to have carnal intercourse with this prosecutrix and to use all force necessary to overcome all resistance upon her part. He seems to have made an effort to seduce this lady, and his outrageous conduct evidence a wish and an attempt to persuade her to such act, but the testimony shows no attempt to rape.

In order that this conviction might be upheld, there must be some character of an assault. Mere words do not constitute an assault, although they may have great weight in evidencing the purpose or intent with which an actual assault is committed. The exposure of his person would also, to some extent, be indicative, as well as explanatory, of the purpose of his repeated visits to this unprotected woman. Nevertheless, such an exposure could hardly be called an assault with intent to rape.

That this Negro man may have had some designs upon the prosecutrix seems fairly certain, and his statements and argu-

ments, as well as his lascivious actions, would evidence his purpose, but there is an entire absence of any overt act upon his part to assault this lady and overcome any and all resistance upon her part. True it is, that she was behind locked doors during his visits, and it could be inferred that he had cut the screen near her head, but we find no assault nor threatening gesture upon his part that could be called an assault.

Mr. Branch, in his Criminal Law of Texas, p. 454, sec. 714, summarizes the law as follows:

"To be guilty of this offense defendant must have made an assault with the intent to have carnal knowledge of the female by the use of such force as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case, and if his intention falls short of this, he is not guilty of assault with intent to rape, however outrageous the assault may be. There must be sufficient evidence to authorize the jury to believe that it was his intention to have the carnal knowledge at the time at all hazards; that he intended to use sufficient force to accomplish his purpose notwithstanding any resistance the female might make."

Many cases are cited in support of the text. In addition thereto, we cite the following later cases: Lacey v. State, 137 Tex. Cr. R. 87, 127 S. W. (2d) 890; Cockrell v. State, 144 Tex. Cr. R. 549, 165 S. W. (2d) 108; Bartlett v. State, 117 Tex. Cr. R. 468, 38 S. W. (2d) 103; Cotton v. State, 52 Tex. Cr. R. 55, 105 S. W. 185.

While the facts shown herein are repulsive, nevertheless, they fall short of showing an assault with intent to commit rape. Therefore, the judgment is reversed and the cause remanded.